2000 ME 75

**Robert P. BAHRE**

v.

**LIBERTY GROUP, INC., Liberty Management, Inc., and Michael A. Liberty, individually.**

Supreme Judicial Court of Maine.

Argued March 7, 2000.

Decided April 28, 2000.

Louis H. Kornreich, (orally), George Z. Singal, Gross, Minsky, Mogul & Singal, P.A., Bangor, for plaintiff.

Michael J. Gartland, (orally), George J. Marcus, Marcus, Grygiel & Clegg, P.A., Portland, for defendants.

Before CLIFFORD, RUDMAN, SAUFLEY, ALEXANDER, and CALKINS, JJ.

RUDMAN, J.

[¶ 1] Liberty Group, Inc., Liberty Management, Inc., and Michael A. Liberty, individually, (collectively Liberty) appeal from a summary judgment entered in the Superior Court (Cumberland County, *Mills, J.*) in favor of Robert P. Bahre. Liberty asserts that the court abused its discretion when it (1) denied Liberty's motion to amend its answer and (2) granted Bahre's motion to strike two affidavits, and that the court erred when it granted Bahre a summary judgment. Finding neither abuse of discretion nor error, we affirm the judgment.

I.

[¶ 2] On July 31, 1996, Bahre and Liberty entered into a Forbearance Agreement, Release and Guaranty. Katahdin Corporation, Liberty Group, Inc., Liberty Management Inc., and Michael A. Liberty, individually, guaranteed payment of $1,000,000 by June 30, 1997, to Bahre to satisfy a $1,127,368.85 judgment Bahre held against Katahdin Corporation. The agreement provided for three payments: $600,000 by December 31, 1996; $100,000 by March 1, 1997; and $300,000 by June 30, 1997. The contract included a full integration clause that read:

> This Agreement constitutes the entire agreement among the parties, superseding any prior written or other understandings and shall not be modified except by a written amendment signed by each of the parties.

In return for Liberty's promise to pay $1,000,000, Bahre agreed to forbear his right to seek the appointment of a receiver for Katahdin Corporation, Liberty Group, Inc., and Liberty Management, Inc. Michael Liberty was a corporate officer and shareholder of Katahdin Corporation.

[¶ 3] Bahre received the first $600,000, pursuant to the forbearance agreement,

but he has yet to receive the remaining $400,000. Bahre filed a complaint in Superior Court seeking the money owed on the contract. Liberty filed an answer in which Liberty admitted entering into the forbearance agreement. The answer did not deny that Liberty owed Bahre $400,000.

[¶ 4] After Liberty filed its answer admitting to the contract, Bahre filed a motion for a summary judgment. Liberty then filed a motion to amend its answer to include a counterclaim—Liberty filed this motion to amend four days after it could have done so as a matter of course. Liberty's motion did not provide a legal or factual basis for the counterclaim. Liberty was represented by the same attorney for the answer and motion to amend, yet Liberty's only justification for the amendment of the unspecified omitted counterclaim was that Liberty had retained new counsel who intended to add a new counterclaim.[1]

[¶ 5] In response to Bahre's motion for a summary judgment, Liberty submitted two affidavits asserting that the contract was unenforceable because it was induced by Bahre's fraudulent misrepresentations. Liberty's new attorney, Daniel G. Lilley, signed an affidavit stating that he was retained by Michael Liberty; that he had reviewed the "entire facts" of the case; and that the facts indicated that Liberty should file a counterclaim against Bahre for fraud. Michael Liberty also submitted an affidavit stating that Bahre's promise to obtain NASCAR events for the Oxford Plains Speedway was the *only* reason he entered into the forbearance agreement. Liberty's affidavit maintained that his attorney would, with leave of court, assert "the affirmative defense of fraud" and the counterclaim of slander.

[¶ 6] Liberty requested that the court deny the motion for summary judgment pursuant to M.R. Civ. P. 56(f). Bahre filed a motion to strike the Lilley and Liberty affidavits. The court denied Liberty's mo-

---

1. At oral argument, Liberty's counsel clarified that Liberty's new counsel, Daniel G. Lilley, agreed only to take Liberty's case if the old counsel obtained the court's permission to amend.

tion to amend its answer; granted Bahre's motion to strike the Liberty and Lilley affidavits; and granted Bahre's motion for a summary judgment. This appeal followed.

## II.

[¶ 7] Liberty asserts that the court exceeded the bounds of its discretion by denying its motion to amend pursuant to M.R. Civ. P. 13(f) and 15(a).[2] Bahre maintains, *inter alia*, that the court properly denied the motion to amend because Liberty did not comply with M.R. Civ. P. 7(b)(3). We review the denial of a motion to amend for abuse of discretion. *See Thibodeau v. Cole*, 1999 ME 150, ¶ 5, 740 A.2d 40, 42. A party seeking to overturn the denial of a motion to amend must demonstrate (1) that the court clearly and manifestly abused its discretion and (2) that the amendment is necessary to prevent injustice. *See id.*

[¶ 8] Because we review for abuse of discretion, we must examine the record before the court at the time the motion was filed. The Superior Court had before it a complaint that alleged contract liability and an answer that admitted entering into the contract and did not deny liability on that contract. In its answer, Liberty only asserted the defenses of laches and failure to state a claim upon which relief can be granted; moreover, Liberty did not assert any counterclaims.

[¶ 9] The court next received Bahre's motion for summary judgment which included a statement of material facts and accompanying affidavits attesting to Liberty's liability under the contract. Liberty then submitted a motion to amend its answer to include a counterclaim. The motion, and the incorporated memorandum of law supporting the motion, did not provide a legal or factual basis for the counterclaim. The motion merely asserted that Liberty should be allowed to include a permissive counterclaim because "leave to amend should be freely given" and the case was only six weeks old. Although Liberty cited to M.R. Civ. P. 13(f) which allows omitted counterclaims to be added upon a showing of "oversight, inadvertence, or excusable neglect, or when justice so requires," Liberty never argued that any of those enumerated circumstances existed.

[¶ 10] Next, Liberty filed—in response to Bahre's motion for summary judgment—two affidavits asserting that the contract was unenforceable due to the affirmative defense of fraud. Fraud must be pleaded with particularity and is waived if not pleaded in the answer. *See* M.R. Civ. P. 8(c) & 9(b). The court, however, first became aware that Liberty wanted to plead the "affirmative defense of fraud" and raise the counterclaim of slander when Liberty filed affidavits in opposition to Bahre's motion for a summary judgment. Liberty's affidavits referred to the affirmative defense of fraud while Liberty's motion to amend only asked to assert a per-

---

**2.** Rule 13(f) states in relevant part:
  (f) Omitted Counterclaim. When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may by leave of court set up the counterclaim by amendment.
M.R. Civ. P. 13(f).
Rule 15 states in pertinent part:
  (a) Amendments. A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.
M.R. Civ. P. 15(a).

missive counterclaim—not an affirmative defense.

[¶ 11] Rule 7(b)(3) requires a moving party to include a draft order granting the motion and a specific statement of the relief to be granted with the motion to amend. *See* M.R. Civ. P. 7(b)(3). Contrary to Liberty's contention at oral argument, Liberty did not submit a draft order or a specific statement informing the court of its desire to plead fraud with its motion to amend. To comply with Rule 7(b)(3), Liberty should have (1) described its fraud defense in its motion to amend; and (2) included a draft order granting it permission to include the fraud defense. Although not required by Rule 7(b)(3), Liberty would have been wise to include a draft pleading outlining the fraud defense. As we stated in *Thibodeau*, when the court is presented with a motion to amend with no facts indicating what the amendment would entail, the court has no choice but to deny the motion to amend. *See Thibodeau*, ¶ 5, 740 A.2d at 42. Because Liberty's motion to amend did not comply with Rule 7(b)(3), we cannot say that the court exceeded the bounds of its discretion when it denied the motion.

### III.

[¶ 12] Next, we must consider whether the court abused its discretion when it struck the Liberty and Lilley affidavits. We review judgments on motions to strike for abuse of discretion. *See McNutt v. Johansen*, 477 A.2d 738, 740 (Me.1984). Liberty argues that the affidavits should not have been stricken because the requirements for an affidavit under Rule 56(f) are less stringent than the requirements of Rule 56(e) and "need not be based on personal knowledge." Liberty is mistaken. Rule 56(e) mandates that all supporting or opposing affidavits be based upon personal knowledge. *See* M.R. Civ. P. 56(e);[3] *Spickler v. Greenberg*, 586 A.2d 1232, 1234 (Me.1991) (holding that affidavit must "show affirmatively that the affiant has personal knowledge of the matters asserted"). Rule 56(f) does not abrogate the personal knowledge requirement for affidavits. *See* M.R. Civ. P. 56(f).[4] Rule 56(f) merely allows the court to deny the summary judgment motion or to order a continuance for further discovery before ruling on the motion. *See* M.R. Civ. P. 56(f). Affidavits submitted pursuant to Rule 56(f) must also meet the requirements of Rule 56(e). *See* 10B Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2740 (1998) (stating that requirements of Rule 56(e) affidavits apply to Rule 56(f) affidavits).

[¶ 13] Although offered pursuant to Rule 56(f), Liberty's affidavit is a Rule 56(e) affidavit. The affidavit attests to specific facts which would create a genuine issue of material fact regarding Bahre's fraud, if Liberty were allowed to plead fraud in the inducement. Liberty explains that Bahre's NASCAR promise was the only reason he entered into the agreement. His affidavit complies with Rule 56(e) requirements because he has personal knowledge of the facts to which he attests; the affidavit sets forth information that would be admissible in evidence if the fraud defense was allowed; and it mani-

---

3. Rule 56(e) reads in relevant part:

   Supporting and opposing affidavits shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.
   M.R. Civ. P. 56(e).

4. Rule 56(f) states:

When Affidavits Are Unavailable. Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.
M.R. Civ. P. 56(f).

fests that he is competent to testify. *See* M .R. Civ. P. 56(e). Nevertheless, we cannot say that the court exceeded the bounds of its discretion here because even if the court erred in striking Liberty's affidavit, the consideration of the affidavit would not have affected the court's disposition of the summary judgment motion. Liberty's affidavit did not create a genuine issue of material fact regarding Liberty's liability on the contract.[5]

[¶ 14] The Superior Court properly struck Lilley's affidavit. Lilley's affidavit did not comply with the requirements of a Rule 56(f) affidavit. In his affidavit, Lilley attests to facts in the case to which he has no personal knowledge and makes impermissible conclusory statements. *See Spickler,* 586 A.2d at 1234 (noting that conclusory statements are inappropriate in affidavits). Paragraph five of Lilley's affidavit read as follows:

> 5. Mr. Bahre would not permit Mr. Liberty to evidence that *quid pro quo* because of the probable implications of illegality on the part of Mr. Bahre's part [*sic*] including potentially restraint of trade, unfair trade practices, and violations of federal anti-trust law.

Lilley could not have had personal knowledge of why reference to NASCAR was not in the forbearance agreement as he was not present during the negotiations and did not represent Liberty at that time.

### IV.

[¶ 15] We review the grant of a summary judgment for errors of law and independently examine the record to determine if a genuine issue of material fact exists. *See Nevin v. Union Trust Company,* 1999 ME 47, ¶ 5, 726 A.2d 694, 696. We view the evidence in "a light most favorable to the party against whom the judgment has been granted." *Id.* Liberty's answer admitted that it entered into the forbearance agreement and that the document speaks for itself concerning liability. *See Schott Motorcycle Supply, Inc. v. American Honda Motor,* 976 F.2d 58, 61 (1st Cir.1992) (stating that "a party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding"). In its statement of material facts, Liberty did not controvert that it still owed Bahre $400,000 under the agreement. Summary judgment was appropriate because there is no genuine issue of material fact and as a matter of law, Liberty still owes Bahre $400,000 under the agreement.

The entry is:

Judgment affirmed.

CLIFFORD, J., dissenting.

[¶ 16] I respectfully dissent. M.R. Civ. P. 15(a) provides that leave to amend a pleading shall be freely given when justice so requires. In *Kelly v. Michaud's Ins. Agency, Inc.,* 651 A.2d 345 (Me.1994), we said that " '[t]his mandate means that if the moving party is not acting in bad faith or for delay, the motion will be granted in the absence of undue prejudice.' " *Id.* at 347 (quoting *John W. Goodwin, Inc. v. Fox,* 642 A.2d 1339, 1340 (Me.1994)).[6]

[¶ 17] The complaint was filed on March 10, 1999. The motion to amend the answer and to assert a counterclaim was filed on April 23, 1999. In denying the motion to amend, the court made no finding of bad faith, nor did it find that the motion was filed for purposes of delay. Moreover, there has been no showing of undue preju-

---

5. We stress that the fatal flaw of Liberty's case is its failure to comply with Rule 7(b)(3). The grant of a summary judgment would not have been appropriate had Liberty described the fraud defense in its motion to amend.

6. Although the decision whether to grant leave to amend is committed to the trial court's discretion, " '[d]iscretion may be a misleading term, for rule 15(a) severely restricts the judge's freedom, directing that leave to amend 'shall be freely given when justice so requires.' " *Espey v. Wainwright,* 734 F.2d 748, 750 (11th Cir.1984) (quoting *Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594, 597 (5th Cir.1981)).

dice to the plaintiff if the motion to amend were granted.

[¶ 18] As the Court correctly concludes, the trial court impermissibly struck the affidavit of Michael Liberty. In that affidavit Liberty alleges that he was fraudulently induced into signing the forbearance agreement on which this lawsuit is based. Such evidence would be admissible at trial and creates a genuine issue of material fact that should have precluded the entry of a summary judgment. *See LeClair v. Wells,* 395 A.2d 452, 453 (Me.1978).

[¶ 19] The law favors cases being decided on their merits. *See Espey v. Wainwright,* 734 F.2d 748, 750 (11th Cir.1984). " 'The philosophy of the rules is that pleadings are not an end in themselves, but only a means of bringing into focus the area of actual controversy. Leave to amend should be freely granted when justice so requires. A party should not be precluded by the technicalities of pleading from presenting his claim or defense on its merits unless the pleadings have misled the opposing party to his prejudice.' " *Bangor Motor Co. v. Chapman,* 452 A.2d 389, 392 (Me.1982) (quoting 1 Field, McKusick & Wroth, *Maine Civil Practice* § 15.1 at 301–02 (2d ed.1970)). Because the motion to amend was filed so soon after the complaint was entered, in the absence of an explicit finding by the court that the motion to amend was filed in bad faith or for purposes of delay, I would vacate the summary judgment and remand to allow the filing of an amendment to the answer.